IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RICHARD BARTHOLOMEW, (TDCJ-CID #01976514) | § § § | |
| Plaintiff, | § § | |
| vs. | § | CIVIL ACTION H-16-2758 |
| BRAD LIVINGSTON, et al., | § § § | |
| Defendants. | § § | |

## MEMORANDUM AND OPINION

Richard Bartholomew, an inmate of the Texas Department of Criminal Justice - Correctional Institutions Division, sued in September 2016, alleging civil rights violations resulting from a denial of due process and retaliation. Bartholomew, proceeding pro se and in forma pauperis, sues the following prison officials at the Luther Unit: William H. Jones, Senior Warden; Jaqueline Brown, disciplinary captain; David Roark, sergeant; Miracle J. Elijah, correctional officer; Gina D. Quast, counsel substitute; M. Blalock, grievance officer; John Doe, grievance officer (identification number 1904); and Jane Kemp, educational counselor. Bartholomew also sues Brad Livingston, Director of the TDCJ-CID.

The threshold issue is whether Bartholomew's claims should be dismissed as frivolous.

I.  **Plaintiff's Allegations**

Bartholomew alleges that on April 12, 2016, Officer Elijah Falsey charged Bartholomew with being out of place, in disciplinary case number 20160237561. Bartholomew states that he was

actually attending a class. Sergeant Roark refused to allow Bartholomew to read the statement on the notification form. When Bartholomew refused to sign the notification form, Sergeant Roark ordered Officer Elijah to add another disciplinary charge. On April 16, 2016, Bartholomew was interviewed by Counsel Substitute Quast, who only explained the charge, but she did not explain the process or secure witnesses. Bartholomew spoke to Ms. Kemp who verified that Bartholomew had been attending a class, but she refused to give testimony, sign an affidavit, or supply Bartholomew with exculpatory evidence. On April 18, 2016, Captain Brown presided at Bartholomew's disciplinary hearing. Officer Elijah gave false testimony. Counsel Substitute Quast failed to object to the illegality of the proceedings. Captain Brown refused to allow evidence to be considered that proved Bartholomew's innocence, relying solely on an officer statement and her personal bias. Captain Brown found Bartholomew guilty of being out-of-place and refusing to obey orders. Bartholomew's punishment consisted of a loss of recreation privileges for forty-five days; a loss of commissary privileges for forty-five days; phone restriction for fifteen days; and reduction in good-time earning class status from Line 2 to Line 3.

Bartholomew states that he filed step 1 and step 2 grievances, which were returned to him with "cookie cutter" responses. Bartholomew states: "Plaintiff was retaliated against for speaking out about officers misconduct, for denying him his basic rights due to capricious countermanding rules. Plaintiff was retaliated against for exercising his right to an informal resolution, due process, and redressing his grievances." (Docket Entry No. 12, p. 3).

In its Order for More Definite Statement, this court asked Bartholomew:

(12) Exactly what have you done or supposedly done for which the defendant(s) is retaliating against you? How do you know that defendant(s) is retaliating against you because of that particular conduct?

JAQUELINE BROWN, DISCIPLINARY CAPTAIN: On or about 3/01/2015 - present, has has on a daily basis cite capricious unit rules such as "Shut-up in the hallway.", "No standing in the dayroom.", "No talking to other inmates.", "My officers are always right, if you buck them I will see to it you pay,", "We make the rules not anyone else, the handbook means nothing.", etc. and when plaintiff quotes legislative rules that gives him these rights, such as freedo[m] of speech, she answers "Oh you think you are smart?", "I will teach you a lesson you will never forget,", "If you get into it with my officer, I will slam you in court.", etc.
There can be no other reason but because Plaintiff went to trial against officer and he is being retaliated against for these reason to abuse and punish Plaintiff out of discrimination to deter him from pleading innocent ever again.
DAVID ROARK, SERGEANT: On or about 3/01/2015 - present, has on a daily basis cite capricious unit rules such as "Shut-up in the hallway.", "No standing in the dayroom.", "No talking to other i[n]mates.", "I make the rules around here, noone else.", "I will make you wish you never came to prison.", "I will lock you up if you don't like it.", etc.
There can be no other reason but because Plaintiff tried to plead his innocence and the fact that another charge was added to the case after their conversation, and to abuse the Plaintiff further to deter him from pleading innocent again.
MIRACLE J. ELIJAH, C/O: On or about 4/01/2016, has on a daily basis cite capricious unit rules such as "Shut-up in the hallway.", "No standing in the dayroom.", "No talking to other inmates.", "I will write you a case if I see you again.", etc.
Plaintiff was at school at the time of the incident alleged and there can be no other reason for this abuse other than he had a vendetta against plaintiff and that plaintiff not only plead innocent but could prove his innocence which made him look bad. He is continuing his abuse to force Plaintiff not to defend himself and to deter him from ever defending himself again.
GINA D. QUAST, SUBSTITUTE COUNSEL: On or about 4/12/2016, did meet with Ms. Quast, who [o]nly wanted Plaintiff to plead guilty, when he refused she became very cold and refused any further assis[]tance. Ms. Quast had a duty to protect Plaintiff but refused to help out of retaliation for pleading innocent to abuse him further and to deter him from pleading innocent in the futher[sic]. There can be no other reason because the Plaintiff was innocent and could prove it beyond a shadow of a doubt but even after Plaintiff made it known to her and the court she sat idlely[sic] by and let him be subjected to a malicious trial and excessive punishment.
"JANE DOE" GRIEVANCE INVESTIGAT[]OR: On or about 4/29/2016, had a responsibility to investigate the facts of the complaint and rule fairly. But since she is friends with the State and the Defendant(s) she refused to follow procedure and deny Plaintiff relief out of retaliation for grieving the misconduct of her friend(s) and co-workers.
There can be no other reason for the total neglect of law, job duty, and discrimination and contempt for the Plaintiff for filing a grievance and trying to prove his innocence.

(Docket Entry No. 12, p. 10).

When asked if anyone had threatened him because of his exercising his right to file grievances, Bartholomew responded:

> All Defendant(s) have made statement(s) as described above on a daily basis, too many times, and in too many ways to be able to state any one statement word for word perfect. These statements are made to all offenders all day and night long. Threats include cases, shipping to a da[n]gerous unit, physical violence, loss of privileges/rights, lock-up, getting other inmates to cause physical harm, changing restrictions, charging with new charges, and many more depending their mood. This question is vague and a deliberate attempt to deny inmate equal access to the courts. The courts know the abuses of prison enviro[n]ment and know this question is impossible to answer because there is not enough time, paper or recording devices to get it right to satisfy the courts request. Plaintiff gave citations of threats and actions taken around the the time of the incident that prove that he has been violated by the defendant(s) in malice and that they are responsible under the law as any other U.S. citizen for committing crimes against innocent helpless persons under thier[sic] care.
> Also all inmates are threatened continually by all officials every day in too many ways to document with any kind of exactness. The main topic of discution[sic] on this unit is the abuses of officials aga[i]nst inmates and how they do it and the fear they live with everyday all day that they will cause THEM HARM FOR NO REASON AND JUST TO ABUSE THEM AS SOME KIND OF SPORT. There is not enough time, paper, or recording devices to get it right to satisfy the courts request. Inmates know that they are in danger of the malicious attacks by officials every second of everyday and live in fear of what is coming next that might keep them from returning to their loved ones.

(Docket Entry No. 12, pp. 11-12).

Bartholomew seeks $500,000.00 in compensatory damages from each defendant.

**II.    Discussion**

A federal court has the authority to dismiss an action in which the plaintiff is proceeding *in forma pauperis* before service if the court determines that the action is frivolous or malicious. 28 U.S.C. § 1915(e)(2)(B)(i). A complaint is frivolous if it lacks an arguable basis in law or fact. *See Denton v. Hernandez,* 504 U.S. 25, 31 (1992); *Richardson v. Spurlock,* 260 F.3d 495, 498 (5th Cir.

2001) (citing *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997)). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott*, 157 F.3d 1003, 1005 (5th Cir. 1998) (quoting *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1997)).

Procedural protections in the context of prison discipline is not the same as due process in the criminal law context because "[p]rison discipline proceedings are not a part of a criminal prosecution, and the full panoply of rights due a criminal defendant does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). The Supreme Court has historically held that the Due Process Clause is applicable to disciplinary proceedings where a prisoner is threatened with a loss of good-time or the imposition of solitary confinement. *Id.* The Court held that inmates must be afforded written notice of the claimed violation at least twenty-four hours before a disciplinary hearing, a written statement of the fact finders as to the evidence relied on and reasons, and the right to call witnesses and present documentary evidence where such would not be unduly hazardous to institutional safety or correctional goals.

The Supreme Court subsequently limited challenges to disciplinary cases in *Sandin v. Conner*, 515 U.S. 472 (1995). The Court referred to its discussion in *Wolff v. McDonnell*, regarding solitary confinement as "dicta." *Id.* The Supreme Court went on to hold that when discipline, even segregated confinement, did not "present the type of atypical, significant deprivation in which a state might conceivably create a liberty interest," there was no "protected liberty interest" that would entitle the inmate to the procedural protections set forth in *Wolff. Id.* at 486.

The Fifth Circuit has applied *Sandin* to a number of situations. Punishment consisting of placement in administrative segregation or the loss of the opportunity to earn good-time is not

enough to trigger the protection of the Constitution. *Luken v. Scott,* 71 F.3d 192 (5th Cir. 1995). The loss of the opportunity to earn good-time will not trigger the protection of the Constitution even when an inmate is eligible for mandatory supervision. *Malchi v. Thaler,* 211 F.3d 953 (5th Cir. 2000). The imposition of commissary and cell restrictions likewise will not trigger the protection of the Constitution. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997). The loss of good-time will not support relief to the extent that it adversely affects parole eligibility. *Sandin,* 515 U.S. at 487. However, the loss of good-time will trigger the protection of the Constitution if, and only if, a prisoner is eligible for release on mandatory supervision. *Madison v. Parker,* 104 F.3d at 769.

Bartholomew's punishment consisted of a loss of recreation privileges for forty-five days; a loss of commissary privileges for forty-five days; phone restriction for fifteen days; and reduction in good-time earning class status from Line 2 to Line 3. The restrictions on Bartholomew's privileges are merely changes in the conditions of his confinement, which do not implicate due process concerns. *Madison v. Parker,* 104 F.3d 765, 768 (5th Cir. 1997). They are not penalties that would be considered "the type of atypical, significant deprivation" that would be actionable. *Id. See also Malchi v. Thaler,* 211 F.3d 953, 958 (5th Cir. 2000); *Pichardo v. Kinker,* 73 F.3d 612, 612-13 (5th Cir. 1996). The Fifth Circuit has specifically held commissary and telephone restrictions do not implicate protected liberty interests. *Lewis v. Dretke,* No. 02–40956, 54 F. App'x 795, 2002 WL 31845293 (5th Cir., December 11, 2002), *citing Malchi v. Thaler,* 211 F.3d 953, 958 (5th Cir. 2000); *Luken v. Scott,* 71 F.3d 192, 193 (5th Cir. 1995) (stating reductions in line-class status do not implicate due process concerns); *Neals v. Norwood,* 59 F.3d 530, 533 (5th Cir. 1995).

Bartholomew's due process claim is dismissed as frivolous. 28 U.S.C. § 1915A(b)(1).

## III. The Retaliation Claim

Bartholomew alleges that prison officials retaliated against him for filing grievances. The Fifth Circuit has held that prison officials are prohibited from retaliating against inmates who exercise the right of access to the courts, or who complain of prison conditions or about official misconduct. *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995) (citations omitted). When a prisoner claims that officials retaliated against him by issuing a false disciplinary report, favorable termination of the underlying disciplinary charge is not a prerequisite for bringing the claim. *Woods*, 60 F.3d at 1164. The concern is whether there was retaliation for the exercise of a constitutional right, separate and apart from the apparent validity of the underlying disciplinary report. *Id.* at 1164-1165. "An action motivated by retaliation for the exercise of a constitutionally protected right is actionable, even if the act, when taken for a different reason, might have been legitimate." *Id.* at 1165 (citations omitted). In addition, proceedings that are not otherwise constitutionally deficient may be invalidated by retaliatory animus. *Id.* (citations omitted).

To prevail on a claim of retaliation, a prisoner must establish the following: (1) the exercise of a specific constitutional right; (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right; (3) a retaliatory adverse act; and (4) causation. *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir. 1999) (citing *McDonald v. Steward*, 132 F.2d 225, 231 (5th Cir. 1998)). Causation requires a showing that "but for the retaliatory motive, the complained of incident . . . would not have occurred." *McDonald*, 132 F.3d at 231 (citing *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997)). The constitutional protections afforded those who seek access to the courts extend only to those who prepare legal work for themselves. "[N]either any frivolous filings nor secondary litigation activity, i.e., legal research and writing that does not involve preparation of

lawsuits challenging a writ writer's own conviction(s) or the conditions of his or her confinement, may comprise the basis of a retaliation claim." *Johnson*, 110 F.3d at 311.

In reviewing claims of retaliation arising from the context of prison disciplinary charges, the Fifth Circuit has recognized that "[c]laims of retaliation must . . . be regarded with skepticism, lest federal courts embroil themselves in every disciplinary act that occurs in state penal institutions." *Woods*, 60 F.3d at 1166 (citing *Adams v. Rice*, 40 F.3d 72, 74 (4th Cir. 1994)). The Fifth Circuit recited the applicable standard of review:

> To assure that prisoners do not inappropriately insulate themselves from disciplinary actions by drawing the shield of retaliation around them, trial courts must carefully scrutinize these claims. To state a claim of retaliation an inmate must allege the violation of a specific constitutional right and be prepared to establish that but for the retaliatory motive the complained of incident-such as the filing of disciplinary reports as in the case at bar-would not have occurred. This places a significant burden on the inmate. Mere conclusory allegations of retaliation will not withstand a summary judgment challenge. The inmate must produce direct evidence of motivation or, the more probable scenario, "allege a chronology of events from which retaliation may plausibly be inferred."

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995)(internal citations and footnotes omitted).

Conclusory allegations of retaliation will not withstand a summary judgment challenge. *Woods*, 60 F.3d at 1166 (citing *Richardson v. McDonnell*, 841 F.2d 120, 123 (5th Cir. 1988) (upholding summary judgment dismissal of retaliation claim where inmate never offered documentary or testimonial evidence in support of assertions)); *Jones*, 188 F.3d at 326 ("because Jones has alleged no facts sufficient to demonstrate that the appellees have engaged in conduct that will result in a violation of his right of access to the court his retaliation claims fail."). Some acts, even though they may be "motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights." *Morris v. Powell*, 449 F.3d 682, 686 (5th

Cir. 2006) (citing *Crawford–El v. Britton,* 523 U.S. 574, 588 n.10 (1998)). *Id.* "Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim." *Id.* Retaliation is actionable only if it "is capable of deterring a person of ordinary firmness from further exercising his constitutional rights." *Bibbs v. Early,* 541 F.3d 267, 270 (5th Cir. 2008) (citation omitted).

Bartholomew alleges that disciplinary case number 20160237561 was filed against him in retaliation for his complaints about prison officials' misconduct. Even though Bartholomew carries the burden of establishing retaliation, he offers no specific facts or documentary evidence to support his blanket allegation of retaliation. *See McDonald,* 132 F.3d at 231 (inmate failed to provide evidence of retaliatory intent). Although Bartholomew has identified a constitutional right, the right to file complaints or grievances against an officer, he fails to identify when the alleged complaints or grievances were filed and the issues presented. *See Woods,* 60 F.3d at 1166; *Richardson v. McDonnell, et al.,* 841 F.2d at 123.

On April 12, 2016, Bartholomew was charged with being out of place and refusing to obey an order in disciplinary case number 20160237561. The court presumes that any conduct for which Bartholomew was being retaliated against, would have had to have taken place before this date. In neglecting to allege fact-specific details, Bartholomew has not demonstrated that any of the individuals involved in this disciplinary case had knowledge of any alleged complaints or grievances filed against them. Bartholomew has failed to demonstrate that these individuals initiated this disciplinary case to retaliate against him for filing complaints or grievances against prison officials. Bartholomew's claim of retaliation, standing alone, fails to meet the requisite proof of causation: he has failed to establish that but for his filing complaints and grievances against any TDCJ-CID employee, he would not have been charged and found guilty of the prison disciplinary violation at

issue. *See McDonald*, 132 F.3d at 231.

Finally, Bartholomew's allegation cannot be deemed to provide "a chronology of events from which retaliation may plausibly be inferred." *Woods*, 60 F.3d at 1166. Bartholomew asserts that prison officials fabricated charges against him on April 12, 2016. Bartholomew's mere use of the word retaliation in the absence of specific facts or documentary evidence cannot support a claim of retaliation. Consequently, Bartholomew's claim must fail. *Id.*; *Johnson*, 110 F.3d at 310 ("[t]he relevant showing in such cases must be more than the prisoner's "personal belief that he is the victim of retaliation.") (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)); *Richardson*, 841 F.2d at 120. Bartholomew's allegation that this disciplinary case was the result of retaliation is conclusory and must be denied.

On June 22, 2016, Bartholomew filed Step 1 grievance #2016164797, complaining of the disciplinary case number 20160237561, in which he was charged with being out of place. He complained that he was charged based on fabricated evidence, and he was denied due process. Prison officials responded that:

> Disciplinary case #20160237561 has been reviewed and no procedural errors were identified. There was sufficient evidence to support the guilty verdict. The punishment imposed by the DHO (Disciplinary Hearing Officer) was within the established TDCJ guidelines. Therefore there is no warrant in overturning this disciplinary. No further action is warranted.

(Docket Entry No. 12-1, p. 4).

On July 13, 2016, Bartholomew filed Step 2 grievance #2016164797, complaining of the disciplinary case number 20160237561. Prison officials responded:

> Disciplinary Case #20160237561 has been reviewed. The disciplinary charge was appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence. All due process requirements were satisfied and the punishment

> assessed by the Disciplinary Hearing Officer was within agency guidelines. No further action is warranted in this matter.

(Docket Entry No. 12-1, p. 6).

Bartholomew maintains that the defendants retaliated against him because he availed himself of the grievance process. This is an insufficient allegation of causation as "temporal proximity alone is insufficient to prove but for causation." *Strong v. Univ. Healthcare Sys., L.L.C.*, 482 F.3d 802, 808 (5th Cir. 2007); *see also Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997). The fact that one event follows another in time does not raise an inference of retaliation. *Enlow v. Tishomingo Cnty., Miss.*, 45 F.3d 885, 889 (5th Cir. 1995). The record undercuts Bartholomew's arguments that the disciplinary charges were false and retaliatory. Prison officials investigated Bartholomew's claims of retaliation in relation to the disciplinary case and determined that there was sufficient evidence to support the finding of guilt. Bartholomew has not shown that, but for the alleged retaliatory motive, he would not have been charged with a disciplinary case for being out of place.

Bartholomew complains that he was threatened on a daily basis by all staff to comply with capricious orders. These alleged threats do not set out a constitutional claim because the Fifth Circuit has stated that mere threatening language and gestures of a custodial officer do not, even if true, amount to constitutional violations. *Bender v. Brumley*, 1 F.3d 271, 274 n.3 (5th Cir. 1993); *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983). Bartholomew cannot evade this rule by arguing that the threatening language and gestures were meant to retaliate against him or prevent him from seeking informal resolution even though he had not yet done so. Bartholomew's objections in this regard are without merit.

Bartholomew has not sufficiently alleged a retaliatory motive by the defendants, and he has

not alleged a chronology of events from which retaliation may be plausibly inferred. Bartholomew's personal belief and conclusory allegations are insufficient to raise a factual dispute that the defendants acted to retaliate. *See Jones v. Greninger,* 188 F.3d 322, 324–25 (5th Cir. 1999); *Woods,* 60 F.3d at 1166. Bartholomew's retaliation claim lacks merit and is dismissed, without leave to amend because amendment would be futile.

## IV. The Claim Based on an Inadequate Grievance System

Bartholomew alleges that the defendants violated his civil rights by failing to resolve the complaints presented in his grievances. "A prisoner has a liberty interest only in freedoms from restraint imposing atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005) (internal citation and quotation omitted). An inmate does not have a constitutionally protected liberty interest in having grievances resolved to his satisfaction. There is no due process violation when prison officials fail to do so. *Geiger v. Jowers,* 404 F.3d 371, 373-74 (5th Cir. 2005); *see also Edmond v. Martin, et al.,* slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); *Thomas v. Lensing, et al.,* slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). The defendants' alleged failure to address the grievances to Bartholomew's satisfaction did not violate his constitutional rights. The excerpts from the grievance responses submitted by Bartholomew show that the defendants investigated his grievances and provided timely responses. (Docket Entry No. 12-1, pp. 1-6). Bartholomew filed his Step One Grievance on June 22, 2016. On July 5, 2016, grievance officials explained to Bartholomew that disciplinary case number 20160237561 had been reviewed and no procedural errors were identified. They further found that there was sufficient evidence to

support the guilty verdict. The punishment imposed was within TDCJ guidelines. There were no grounds to overturn the disciplinary conviction. (*Id.* at 4).

Bartholomew filed a Step Two Grievance on July 13, 2016, and on July 27, 2016, grievance officials responded that disciplinary case number 20160237561 has been reviewed. The disciplinary charge was appropriate for the offense and the guilty verdict was supported by a preponderance of the evidence. All due process requirements were satisfied, and the punishment was within agency guidelines. (*Id.* at 6).

Bartholomew's due process claim based on an inadequate grievance procedure lacks merit. 28 U.S.C. § 1915A(b)(1).

## V. The Claim Based on a Denial of Equal Protection

Bartholomew contends that the TDCJ violated his right to equal protection of the law. An inmate's Fourteenth Amendment right to Equal Protection may be violated if a state actor intentionally discriminates against him because of membership in a protected class or due to an irrational or arbitrary state classification unrelated to a legitimate state objective. *Washington v. Davis*, 426 U.S. 229, 247-48 (1976); *Stern v. Tarrant Cnty. Hosp. Dist.*, 778 F.2d 1052 (5th Cir. 1985), *cert. denied*, 476 U.S. 1108 (1986).

Under the Equal Protection Clause, in order to prevail, plaintiffs must show that a defendant acted with discriminatory purpose. *See McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *General Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 390-92 (1982); *Vill. of Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 265 (1977); *Washington v. Davis*, 426 U.S. 229, 240 (1976).

While Bartholomew need not prove that a discriminatory intent was the sole motivating

factor, Bartholomew must show that a discriminatory purpose was a motivating factor. *Vill. of Arlington Heights,* 429 U.S. at 265. As the Supreme Court has observed: "'Discriminatory purpose' ... implies more than an intent as volition or intent as awareness of consequences.... It implies that the decision maker ... selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney,* 442 U.S. 256, 279 (1979). There can be no "negligent" violations of an individual's right to equal protection. Rather, only deliberate discrimination violates the equal protection clause. *See McCleskey,* 481 U.S. at 292; *Vill. of Arlington Heights,* 429 U.S. at 265; *Davis,* 426 U.S. at 240; *United States v. Clary,* 34 F.3d 709, 713 (8th Cir. 1994), *cert. denied,* 513 U.S. 1182 (1995).

To prevail on an equal protection claim, Bartholomew must show that the defendants "purposefully discriminated against him and that he was treated differently from similarly-situated prisoners." *Longoria v. Dretke,* 507 F.3d 898, 904 (5th Cir. 2007). Bartholomew states that he was charged with being out of place and with refusing to obey an order. Bartholomew has not shown that the defendants purposefully discriminated against him and that he was treated differently from similarly-situated prisoners.

The court finds that Bartholomew has failed to meet his burden of demonstrating purposeful discrimination on the part of the TDCJ-CID. Bartholomew's equal protection claim fails.

## VI. The Claims Based on Respondeat Superior

Bartholomew sues Brad Livingston, Director of the TDCJ-CID. Bartholomew claims that this defendant was responsible for the operation of the Luther Unit. Bartholomew has not alleged that this supervisory defendant was personally involved in any of the constitutional violations

Bartholomew alleges. Bartholomew seeks to impose liability on this defendant solely on the basis of his position as an ultimate supervisor.

Individual liability under section 1983 may not be based on a supervisor's vicarious liability for the acts or omissions of employees. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997). Supervisory officials may be liable if their own action or inaction, performed with a certain degree of gross negligence or deliberate indifference, proximately causes a constitutional violation. *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). Bartholomew alleges that this supervisory defendant is liable for actions of his subordinate; such allegations fail to state a claim under section 1983. Bartholomew's claims that the individual employees at the TDCJ-CID are acting under the direction of the supervisory defendant are, as a matter of law, insufficient. *See Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978); *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999); *Southard v. Tex. Bd. of Criminal Justice*, 114 F.3d 539, 551 (5th Cir. 1997); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987). The misconduct of the subordinate must be affirmatively linked to the action or inaction of the supervisor. *Southard*, 114 F.3d at 551. Bartholomew's claim that prison officials were acting under the direction of the supervisory defendant does not affirmatively link the misconduct of the named prison employees to the actions of the supervisory defendant.

To prevail against a supervisory official, the plaintiff must demonstrate that the official's act, or failure to act, either caused or was the moving force behind the plaintiff's harm. *See Monell*, 436 U.S. at 692-94; *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). The supervisor's conduct must be measured against the standard of deliberate indifference. *Alton*, 168 F.3d at 200. "For an official to act with deliberate indifference, 'the official must both be aware of facts from which the

inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Brenoettsy,* 158 F.3d at 911. "The standard of deliberate indifference is high." *Id.* (citing *Doe v. Dallas Indep. Sch. Dist.,* 153 F.3d 211, 218 (5th Cir. 1998)). Bartholomew does not allege that this supervisory defendant was aware of and disregarded a substantial risk to Bartholomew's safety. Bartholomew does not set out specific facts showing that this defendant was personally involved in the violations of Bartholomew's civil rights. The claims against Director Livingston are dismissed.

**VII. Conclusion**

Bartholomew's motion to proceed *in forma pauperis,* (Docket Entry No. 2), is GRANTED. His complaint lacks an arguable basis in law and is DISMISSED with prejudice under 28 U.S.C. § 1915(e)(2)(B)(I). The TDCJ-CID must deduct twenty percent of each deposit made to Bartholomew's inmate trust account and forward payments to the court on a regular basis, provided the account exceeds $10.00, until the filing fee obligation of $400.00 is paid in full.

The Clerk will provide a copy of this order by regular mail, facsimile transmission, or e-mail to:

(1) the TDCJ - Office of the General Counsel, Capitol Station, P.O. Box 13084, Austin, Texas, 78711, Fax: 512-936-2159;

(2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, Fax: 936-437-4793; and

(3)  the Manager of the Three-Strikes List for the Southern District of Texas at: Three_Strikes@txs.uscourts.gov.

SIGNED at Houston, Texas, on \_\_\_\_Oct. 13\_\_\_\_, 2017.

_____
VANESSA D. GILMORE
UNITED STATES DISTRICT JUDGE